

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2009

# David Womack v. Joseph Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2229

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"David Womack v. Joseph Smith" (2009). *2009 Decisions.* Paper 1868.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1868

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-2229

———

DAVID LEE WOMACK,

Appellant,

v.

JOSEPH V. SMITH, et al.,

Appellees.

———

Appeal from the Judgment of the District Court for the Middle District of Pennsylvania
(District Court Civil Action No. 06-2348)

———

Argued February 3, 2009

Before: McKEE, STAPLETON, *Circuit Judges*, and IRENAS,[*] *Senior District Judge.*

Filed : February 12, 2009

John H. Shenefield, Esq.
Maxine M. Woelfling, Esq.
Aaron B. Hewitt, Esq. (Argued)
Morgan Lewis & Brockius LLP
111 Pennsylvania Avenue, NW
Washington, DC 20004

———

[*] The Honorable Joseph E. Irenas, Senior United States District Judge for the District
of New Jersey, sitting by designation.

Deborah M. Golden, Esq.
Washington Lawyers' Committee for Civil Rights and Urban Affairs
11 Dupont Circle, NW
Suite 400
Washington, DC 20036
*Counsel for Appellant*

Martin C. Carlson, Esq.
Michael J. Butler, Esq. (Argued)
Office of the United States Attorney, Middle District of Pennsylvania
228 Walnut Street, Suite 220
Harrisburg, Pennsylvania 17108
*Counsel for Appellees*

———

OPINION

———

IRENAS, *Senior United States District Judge.*

In this *Bivens*[1] action, Appellant David Lee Womack, a federal prisoner, appeals the district court's order granting summary judgment to Appellees, various prison officials. For the reasons stated herein, we will reverse and remand.

I.

From December 8, 2004, through January 3, 2005, Womack was continuously restrained in ambulatory restraints[2] while confined in the Special Housing Unit of the

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] According to the Bureau of Prisons ("BOP"), ambulatory restraints are "approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human

United States Penitentiary at Lewisburg, Pennsylvania ("USP Lewisburg").[3]  Womack

asserts that restraining him in this manner amounted to cruel and unusual punishment

prohibited by the Eighth Amendment because the restraints did not allow him to lie flat

on his bed, bathe, or properly clean himself after using the toilet.[4]  Womack also asserts

that the restraints dug into his skin, causing severe pain from raw, deep, flesh wounds.[5]

After his release from the ambulatory restraints, Womack was placed in solitary

confinement for the following 30 days, after which time he was placed in a cell with a

cellmate, among the general prison population.

On March 13, 2005, Womack initiated the formal grievance procedure for his

Eighth Amendment claim.  That claim was found to be untimely and was alternatively

denied on the merits "for informational purposes only," by USP Lewisburg Warden

---

needs without staff intervention."  (JA0429)  Ambulatory restraints are the first level of restraint in the BOP's "progressive restraint" system.  (Id.)

Womack's ambulatory restraints consisted of "steel feet shackles, steel hand shackles, a steel belly chain, and a black box through which the belly chain and hand shackles were bound." (JA0384)

[3]  Because it is not germane to the disposition of the present appeal, we need not discuss the events that immediately led up to Womack's restraint, nor Womack's extensive and undisputed history of behavior management problems while incarcerated.  *See Womack v. Smith*, No. 06-2348, 2008 WL 822114 at *1-2 (M.D. Pa. March 26, 2008).

[4]  In apparent contradiction to his contention that he could not properly clean himself after using the toilet, Womack admits that while in the ambulatory restraints, he "urinated on the cell and spread feces on the walls so that staff would have to clean the cell and bring a video recorder [which would] document [the] staff's inappropriate use of restraints."  (JA0385)

[5]  According to the Appellee prison officials, the restraints caused "minor irritation" to Womack's ankles and wrists.  (JA0114)

Joseph Smith on April 1, 2005. (JA0227.003) Womack timely appealed the denial to the proper authority, which denied the appeal on the ground that the initial grievance was untimely. Womack timely appealed that decision to the final administrative body, which affirmed on July 20, 2005. Womack's initial grievance and subsequent appeals were all drafted by Womack's cellmate because Womack cannot read or write.

Thereafter, Womack filed the complaint in this case, asserting one count of cruel and unusual punishment against Warden Smith, USP Lewisburg Officer Kenneth Gabrielson, and BOP officials Harley Lappin, D. Scott Dodrill, and Harrell Watts. All defendants moved to dismiss, and alternatively moved for summary judgment, asserting among other arguments, that Womack failed to properly exhaust his administrative remedies and that no Eighth Amendment violation occurred. The defendants also sought, and were granted, a protective order which allowed only written discovery and expressly prohibited the noticing of depositions until after the motion was decided. The district court determined that the protective order was appropriate because the defendants had raised the defenses of qualified immunity and Womack's alleged failure to properly exhaust his administrative remedies.

The district court granted summary judgment to the defendants, holding that Womack's procedural default (by failing to timely file his initial grievance) was not excused. *Womack,* 2008 WL 822114 at *8. The district court alternatively held that no Eighth Amendment violation occurred. *Id.* at *9 n.10.

4

Because disputed issues of material fact preclude summary judgment on both the exhaustion issue and the Eighth Amendment claim, we will reverse and remand.[6]

II.

A.

The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81 (2006); *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231. Thus, we must examine USP Lewisburg's prisoner handbook, which sets out the applicable grievance procedure.

The handbook provides that the initial grievance form "must be filed within twenty (20) calendar days from the date on which the basis for the incident or complaint occurred, *unless it was not feasible to file within that period of time*." (JA0488)(emphasis added). Importantly, the handbook was not part of the summary judgment record before the district court.[7] When the motion was briefed and decided, the parties and the district

---

[6] The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291. We apply a plenary standard of review. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).

[7] Indeed, the handbook was a late addition to the record before this panel-- added only days before oral argument was heard.

court apparently assumed that USP Lewisburg's handbook was identical to the BOP's grievance procedures set out in the Code of Federal Regulations, which contain no "feasibility" exception to the 20 day deadline. *See* 28 C.F.R. § 542.14(a) ("The deadline for completion of . . . a formal written Administrative Remedy Request . . . is 20 calendar days following the date on which the basis for the Request occurred.").[8] Using the BOP regulations, the district court found no dispute that Womack failed to file his grievance within 20 days of the incident, and therefore held that no reasonable factfinder could conclude that Womack had complied with the procedural requirements of the PLRA.

Applying the correct standard, however, issues of material fact exist as to whether Womack could *feasibly* file his formal grievance within 20 days of the complained-of incident. After Womack's release from the ambulatory restraints on January 3, 2005, he spent the following 30 days in solitary confinement. Moreover, upon returning to the general prison population, Womack asserts that "the next time a case manager came through [his] tier" he asked her for "the necessary materials to file a grievance." (JA0387) According to Womack, the case manager did not deliver the grievance materials until the week of February 19, 2005. Thus, a reasonable factfinder might

---

8 *But see also* 28 C.F.R. § 542.14(b) ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: . . . an extended period of time during which the inmate was physically incapable of preparing a Request.").

6

conclude that it was not feasible for Womack to file his initial grievance within 20 days of his release from the ambulatory restraints, and therefore might determine that his initial grievance was timely.[9] Accordingly, the district court's exhaustion decision must be reversed.

B.

We also conclude that the district court erred in alternatively granting summary judgment on the merits of the Eighth Amendment claim.

Prison officials violate the Eighth Amendment's prohibition of cruel and unusual punishment when they "act[] or fail[] to act with deliberate indifference to a substantial risk of serious harm to a prisoner;" or, in other words, "recklessly disregard" a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). In *Farmer*, the Supreme Court declined "to adopt an objective test for deliberate indifference," holding,

> a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

---

[9] Womack argues that if he failed to timely file his grievance, his procedural default should be excused because he was illiterate and therefore did not and could not know of the grievance deadline, which was written in the prisoner handbook. We express no opinion on that argument. We also do not decide what significance, if any, the fact of Womack's illiteracy has in determining the feasibility of filing his grievance within 20 days.

Because the prison officials' subjective state of mind-- what they knew and the reasons for their actions-- are critical inquiries in the Eighth Amendment analysis, we must conclude that the district court erred in granting summary judgment on a record that was limited to only written discovery. Womack never had the opportunity to depose or cross-examine the defendants to discover what they knew and why they acted (or failed to act). Under these circumstances, it would be unfair to fault him for failing to raise an issue of disputed fact as to the alleged Eighth Amendment violation.

Moreover, even on the limited record, disputed issues of material fact preclude summary judgment for defendants. For example, Womack states that the ambulatory restraints caused "big, deep" "raw" wounds on his wrists and ankles that looked like "pink and white meat" and had a "terrible odor;" yet prison staff only cleaned his wounds five times over the 26-day restraint period. (JA0385)

Womack also asserts that the restraints were too tight, causing him to lose circulation in his hands and arms. He claims that a physician's assistant told Defendant Gabrielson that the restraints were cutting off circulation but no one adjusted the restraints.

Lastly, disputed issues of fact exist as to whether Womack could lay down or maintain basic personal hygiene while restrained.

If believed, Womack's evidence, taken as a whole, creates a disputed issue of fact as to whether prison officials were deliberately indifferent to an excessive risk to

8

Womack's health. The issues raised by Womack are very fact sensitive, and in the absence of his ability to depose defendants and complete discovery, his ability to develop facts in opposition to the motion was significantly impaired. *See* Fed. R. Civ. P. 56(f). Accordingly, we will reverse the district court's grant of summary judgment on the merits of the Eighth Amendment claim.

## III.

For the reasons set forth above, the district court's judgment will be reversed and the case remanded for further proceedings consistent with this opinion.